# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### APRIL 2000 Session

## SAM LEE SIMPSON, ET AL. v. ADDIE WILLIAMS DAVIS, ET AL.

**Direct Appeal from the Chancery Court for Fayette County**
**No. 12122; The Honorable Martha B. Brasfield, Chancellor**

_____

**No. W1999-00689-COA-R3-CV - Filed September 15, 2000**

_____

This appeal arises from a breach of fiduciary duty and unjust enrichment action initiated by Sam Simpson against Addie Davis.[1] Simpson alleged Davis breached her duty as trustee of her deceased mother's estate and was unjustly enriched by Simpson's construction of a residence on Davis' property. The trial court held that although Davis did not breach a fiduciary duty, she was unjustly enriched. The court ordered the sale of both the property and residence with proceeds to be allocated between the parties.[2] Davis appeals.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

Ivan D. Harris, Jr., Collierville, for Appellant

J. Payson Matthews, Somerville, for Appellee

**OPINION**

Sam and Lillie Simpson, sister of Addie Davis, moved to Fayette County in 1993 and constructed a residence on the subject real estate. Lillie Simpson died in 1995. On May 1, 1998, Sam Simpson filed suit against Davis in the Fayette County Chancery Court, alleging breach of fiduciary duty and unjust enrichment. Simpson alleged that Davis breached her fiduciary duty as trustee and perpetrated a fraud on her deceased mother's estate by obtaining quitclaim deeds for the property from the beneficiaries for little or no consideration. Simpson also claimed that Davis pocketed forty-five thousand dollars in proceeds from the sale of a portion of the land, and that Davis did not make an

_____

[1]Davis was named individually, in her capacity as executrix of her deceased mother's estate, and in her capacity as trustee of the deceased's trust.

[2]Simpson is now deceased. The executor of Simpson's estate is pursuing the action.

accounting to the estate and trust beneficiaries. In addition, Simpson claimed that Davis was unjustly enriched by Simpson's construction of a residence on her land in Fayette County. The following testimony was presented at trial on the matter on April 23, 1999.

Davis testified that she and her brother were appointed executors of their mother's estate in March 1986. Davis' brother died shortly thereafter, leaving Davis as sole executor and trustee. The decedent's estate included approximately one hundred and ten acres in Fayette County, Tennessee. This land was held in trust for the benefit of Davis and Davis' six remaining siblings. For the two years following Davis' appointment the land was rented. Pursuant to her duties, Davis divided property income with other trust beneficiaries.

In the period between October 1990 and January 1991, Davis' siblings (or their heirs) transferred title of the property to Davis via quitclaim deeds. The named consideration for these deeds ranged from zero to ten dollars. At trial, Davis claimed she actually paid four thousand dollars for each of the quitclaim deeds. In addition, Davis testified that the execution of the quitclaim deeds and subsequent resale of the land was a joint decision by the beneficiaries to raise funds. Following the transfer, Davis sold part of the land for forty-five thousand dollars. Davis claimed Simpson knew of the land's status and had been present during discussions regarding land ownership. Davis also refuted all allegations of fraud and breach of fiduciary duty. One of Davis' other sisters also built a residence on the land. This sister testified that she was aware of Davis' ownership when she built the house.

During the trial, excerpts of a discovery deposition of Simpson were read into evidence.[3] This testimony indicated that in April 1993, Davis' sister, Lillie, and Lillie's husband ("Simpson") moved to Fayette County and built a residence on part of the land. Simpson used his own funds to finance the house construction. At the time Simpson built the house, he was unaware that Davis was the sole owner of the land. Simpson believed that the property was owned jointly by Lillie and her siblings. Lillie died intestate in 1995. According to Simpson, he did not learn of Davis' ownership of the land until he received a document to that effect sometime in 1997.

Following the trial, the judge issued a ruling from the bench holding that Davis did not abuse her fiduciary duties and that she held valid title to the land. The court did, however, find Davis was unjustly enriched by Simpson's construction of a residence on the land. Based on this finding, the trial court ordered that the residence and the acre of land where the residence was located be appraised and sold. The court ordered that Davis be given proceeds equal to the amount of the land itself and that Simpson be given proceeds equal to the value of the residence. Davis appeals.

On appeal, Davis asserts that the trial court erred in allowing Simpson's deposition testimony to be entered into evidence contrary to Tennessee's Dead Man's Statute. In addition, Davis asserts

---

[3] Both prior to and during the testimony, Davis objected to the inclusion of a portion of the deposition testimony, claiming that it violated Tennessee's Dead Man's Statute. The objection centered on Simpson's deposition statement that he and Lillie never discussed the ownership of the property. The court allowed the testimony.

that the trial court erred in finding that Davis was unjustly enriched by Simpson's construction of a residence on Davis' land.  As a final point, Davis alleges that the trial court erred in ordering the sale of the residence and surrounding acre of land.

Simpson presents an additional issue on appeal.  Simpson asserts that the trial court erred in finding that Davis did not violate her fiduciary duty.


## ANALYSIS

The standard of review for a non-jury case is *de novo* upon the record. Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995).  There is a presumption of correctness as to the trial court's factual findings, unless the "preponderance of the evidence is otherwise." TENN. R. APP. P. Rule 13(d).  For issues of law, the standard of review is *de novo*, with no presumption of correctness. Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).


### A. Dead Man's Statute

On appeal, Davis asserts that the trial court erred in allowing certain portions of Simpson's deposition testimony into evidence.  Davis claims that this testimony should have been excluded pursuant to Tenn. Code Ann. §24-1-201, also known as the Dead Man's Statute.  For the following reasons, we find that the trial court did not err in admitting the deposition testimony.

The Dead Man's Statute is not a rule of construction in Tennessee.  On the contrary, it is an exception to the general rule allowing all relevant testimony. See TENN. R. EVI. 402 "This statute cannot be extended by the courts to cases not within its terms, upon the idea that they fall within the evil which was intended to be guarded against.  As an exception, it must be strictly construed as against the exclusion of the testimony, and in favor of its admission." Newman v. Tipton, 234 S.W.2d 994, at 996 (Tenn. 1950).  In order for a case to fall within the operation of this statute and authorize the rejection of the evidence, the proposed witness must be a party to the suit in such way that judgment may be rendered for or against him, and the subject matter of the testimony must be concerning some transaction with or statement by the testator Leffew v. Mayes, 685 S.W.2d 288, at 293 (Tenn. Ct. App. 1984) citing Montague v. Thomason, 91 Tenn. 168, 18 S.W. 264 (1892).

With the foregoing in mind, we now turn to the statute itself.  Tenn. Code Ann. § 24-1-203 provides:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, *unless called to testify thereto by the opposite party*.  Provided, if a corporation be a party, this disqualification shall extend to its officers of every grade and its directors. (emphasis added).

Based on the language of the statute, and taking into account the general tendency toward admissibility of evidence, we find that Simpson's deposition testimony qualifies as an exception. The deposition was taken at Davis' request, by Davis' attorney, therefore Simpson was, in effect, "called to testify thereto by the opposite party." See also Ralls v. Love, No. 01-A-01-9210-CH00398, 1993 WL 49588, *3 (Tenn. Ct. App. 1993) (holding that deposition testimony falls within the statutory exception to the rule of the Dead Man's Statute for instances where the witness is "called to testify by the opposite party"). Accordingly, the trial court did not err on this issue.

## B. Unjust Enrichment

Davis asserts that the trial court erred in finding that she was unjustly enriched by Simpson's construction of a residence on her property. Davis asserts that Simpson was aware of her ownership of the land and cannot recover. In addition, Davis asserts that the trial court erred in ordering the sale of the residence and the acre of land surrounding it. In the interest of clarity, we address these points together. Based on the following, we find that the trial court did not err in its finding that Davis was unjustly enriched nor in its order to sell the affected property.

The doctrine of unjust enrichment is founded upon the principle that someone who receives a "benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so." CPB Management, Inc. v. Everly, 939 S.W.2d 78, at 80 (Tenn. Ct. App. 1996) citing Lawler v. Zapletal, 679 S.W.2d 950, 955 (Tenn. Ct. App.1984). Thus, "liability can be created where one person receives a benefit at the expense of another and it is unjust or inequitable for him to retain this benefit." Jaffe v. Bolton, 817 S.W.2d 19, 26 (Tenn. Ct. App.1991). In essence, unjust enrichment is a quasi-contractual theory in which a court may impose a contractual obligation where one does not exist. Courts will impose this contractual obligation when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. Whitehaven Community Baptist Church v. Holloway, 973 S.W.2d 592, at 596 (Tenn. 1998) citing Paschall's Inc. v. Dozier, 219 Tenn. 45, 407 S.W.2d 150, 154-55 (Tenn. 1966).

Based on the principles mentioned above as well as the facts in the record, we find that Davis was unjustly enriched by Simpson's construction of a residence upon her land. It is appropriate to mention that unjust enrichment does not require bad faith or improper behavior on the part of the enriched party. Thus, while Davis may not have intended to benefit from Simpson's act, she is still accountable to Simpson for the enhanced value of her property. The amount that can be recovered as compensation for improvements to another's land is the amount by which the improvements enhance the value of the land. Uhlhorn v. Keltner, 723 S.W.2d 131, at 137 (Tenn. Ct. App. 1986).[4]

---

[4]The language of the order provides: "The Court further finds that the proper way to determine the value of the dwelling is to order a sale of the dwelling and one acre on which it is situated and to pro-rate between the parties the value of the dwelling only and the value of the one acre upon which it is situated." We find that this is tantamount to the "enhanced value" of the property.

Accordingly, the Chancellor acted properly within her discretionary powers in ordering the sale of the residence and surrounding land to provide funds for Simpson's recovery.

### C. Breach of Fiduciary Duty

Simpson raises an additional issue on appeal, asserting that the trial court erred in finding that Davis did not breach her fiduciary duty. Simpson asserts that Davis was guilty of self-dealing and did not act in the best interest of the estate beneficiaries. We do not agree.

There is no doubt that an executor operates in a fiduciary capacity. Mason v. Pearson 668 S.W.2d 656, at 663 (Tenn. Ct. App. 1983) citing Pritchard on Wills and Estates, 4th ed., Sec. 669 at 221. Among these fiduciary duties is a duty of undivided loyalty to the estate and a duty to deal with the beneficiaries in the utmost good faith. In re Estate of Wallace, 829 S.W.2d 696, at 705 (Tenn. Ct. App. 1992). An executor must disclose all material facts within his knowledge whenever a beneficiary's interest is to be affected. Baker v. Baker, 142 S.W.2d 737, at 750 (Tenn. Ct. App. 1940).

We note that any fiduciary duty regarding the estate and the property in question was owed to Lillie, not Simpson. Since Lillie's interest in the property was sold to Davis prior to Lillie's death, Simpson never became a beneficiary of the estate. Therefore, Davis never owed a fiduciary duty to Simpson. In addition, we find absolutely no evidence supporting a breach of fiduciary duties by Davis. Davis and her sibling testified about the ownership of the land and the execution of the quitclaim deeds. Indeed, in his deposition testimony, Simpson stated that Davis was not dishonest and did not intentionally mislead either himself or Lillie. Accordingly, the trial court did not err on this issue.

### CONCLUSION

For the foregoing reasons, the decision of the trial court is hereby affirmed. Costs of appeal are taxed, one-half to Appellant, Addie Williams Davis, and one-half to Appellee, Sam Lee Simpson, for which execution may issue, if necessary.

_____
ALAN E. HIGHERS, JUDGE